**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DARREN WAKEFIELD, derivatively on behalf of DUTCH BROS INC., | Case No.: |
| Plaintiff, | |
| v. | **DEMAND FOR JURY TRIAL** |
| JONATHAN RICCI, CHARLES L. JEMLEY, TRAVIS BOERSMA, SHELLEY BROADER, THOMAS DAVIS, CHARLES ESSERMAN, KATHRYN GEORGE, STEPHEN GILLETT, and BLYTHE JACK, | |
| Defendants, | |
| and | |
| DUTCH BROS INC., | |
| Nominal Defendant. | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## INTRODUCTION

Plaintiff Darren Wakefield ("Plaintiff"), by and through his undersigned attorneys, derivatively, and on behalf of nominal defendant Dutch Bros Inc. ("Dutch Bros" or the "Company"), brings this derivative action against defendants Jonathan "Joth" Ricci, Charles L. Jemley, Travis Boersma, Shelley Broader, Thomas Davis, Charles Esserman, Kathryn George, Stephen Gillett, and Blythe Jack (collectively, the "Individual Defendants," and together with Dutch Bros, the "Defendants") for breaches of their fiduciary duties as directors and/or officers of

Dutch Bros, violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and for contribution under Sections 10(b) and 21D of the Exchange Act. Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon his attorneys' investigation, including, *inter alia*, an evaluation of: (i) Dutch Bros' publicly available documents; (ii) Dutch Bros' conference calls and press releases; (iii) Dutch Bros' filings made with the United States Securities and Exchange Commission ("SEC"); (iv) legal filings; (v) news publications; (vi) analyst reports pertaining to Dutch Bros; and (vii) information gathered on the internet.

## **NATURE OF THE ACTION**

1.      This is a shareholder derivative action brought on behalf of Dutch Bros against the Individual Defendants for wrongdoing committed between March 1, 2022 and May 11, 2022 (the "Relevant Period").

2.      Dutch Bros is a drive-thru coffee shop chain with company-owned and franchised locations throughout the western and central United States. Dutch Bros is headquartered in Grants Pass, Oregon and incorporated in Delaware.

3.      On March 1, 2022, during an earnings conference call the Company hosted to address its operational and financial results for the fourth quarter and full year 2021, Defendant Joth Ricci ("Ricci"), Dutch Bros' Chief Executive Officer ("CEO") and Defendant Charles Jemley ("Jemley"), Dutch Bros' Chief Financial Officer ("CFO"), made various statements informing shareholders that Dutch Bros' results for the first quarter of 2022 would be positive with robust margins. Defendant Jemley represented to investors that the Company was "just not feeling compression in margins." Defendant Ricci stated that Dutch Bros was "not immune to margin pressures" but was "managing it appropriately" and "feeling good as [it] enter[ed] '22 with the

trajectory of [its] margins, given everything going on."

4.     However, the truth emerged on May 11, 2022 when, after the market closed, the Company issued a press release announcing poor financial results for the first quarter of 2022 ("Q1 2022"). Contrary to the optimistic picture Defendants had painted, the press release revealed Dutch Bros had experienced a net loss of $16.3 million—compared to a net loss of $4.8 million for the first quarter of 2021—and an adjusted net loss of $2.5 million.

5.     Coinciding with the press release, the Company also held an earnings conference call on May 11, 2022 to discuss its financial results for Q1 2022. On the call, Defendant Ricci explained that Dutch Bros' poor margins were to blame for its poor quarterly performance, stating:

> [W]e did not perceive the speed and magnitude of cost escalation within the quarter. Dairy, for example, which makes up 28% of our commodity basket, rose almost 25% in Q1. While costs rose throughout the quarter, we experienced a change in sale trajectory from mid-March onward as macroeconomic headwinds accelerated and comps turned negative.

6.     Defendant Ricci further stated that "margin pressure on our company shops led to a lower adjusted EBITDA" than the company had previously expected. He explained that the Company's "disciplined" approach on price, "faster inflation and cost of goods," increased expenses related to "maintenance of shops," and the expected inefficiencies of new stores resulted in the margin pressure.

7.     The market responded negatively to Dutch Bros' news, as Dutch Bros' share price fell from a closing price of $34.37 on May 11, 2022, to a closing price of $25.11 per share on May 12, 2022, representing a decrease of $9.26 per share or 26.9%.

8.     During the Relevant Period, the Individual Defendants breached their fiduciary duties to Dutch Bros by personally making and/or causing Dutch Bros to make to shareholders and the investing public a series of materially false and misleading statements regarding Dutch Bros'

business, operations, and prospects. Specifically, the Individual Defendants willfully or recklessly made and/or caused Dutch Bros to make false and misleading statements that failed to disclose, among other things, that: (i) Dutch Bros was experiencing an increase in costs and expenses, including costs related to dairy; (ii) as a result, the Company experienced heightened margin pressure and deteriorating profitability in Q1 2022; and (iii) Dutch Bros failed to maintain internal controls. Consequently, Defendants' statements about Dutch Bros' business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

9.      The Individual Defendants also breached their fiduciary duties by failing to correct and/or preventing Dutch Bros from correcting these false and misleading statements and omissions of material fact.

10.      Additionally, in breach of their fiduciary duties, the Individual Defendants caused Dutch Bros to fail to maintain adequate internal controls.

11.      Defendants Ricci and Jemley further breached their fiduciary duties by engaging in insider trading of Dutch Bros common stock while Dutch Bros' stock prices were at artificially inflated rates.

12.      In light of the Individual Defendants' misconduct—which has subjected Dutch Bros, its CEO, and its CFO to being named as defendants in a federal securities fraud class action lawsuit pending in the United States District Court for the Southern District of New York (the "Securities Class Action") and has further subjected the Company to the need to undertake internal investigations, the need to implement adequate internal controls, losses from the waste of corporate assets, and losses due to the unjust enrichment of the Individual Defendants who were improperly overcompensated by the Company and/or who benefitted from the wrongdoing alleged herein—

the Company will have to expend many millions of dollars.

13.     Dutch Bros has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

14.     Demand is excused as Dutch Bros' Board of Directors (the "Board") cannot consider a demand to initiate litigation against themselves and the other Individual Defendants on behalf of Dutch Bros with the requisite level of disinterestedness and independence required. In light of the Individual Defendants', most of whom are Dutch Bros' current directors, breaches of fiduciary duty, their collective participation in fraud, the substantial likelihood of their liability in this derivative action, and Defendant Jemley's and Defendant Ricci's liability in the Securities Class Action, and not being disinterested and/or independent directors, a majority of the Board cannot consider a demand.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)(1)), Rule 14a-9 of the Exchange Act (17 C.F.R. § 240.14a-9), Section 10(b) of the Exchange Act (15. U.S.C. § 78j(b)), and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)). Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

16.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

17.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

18.     Venue is proper in this District because the alleged misstatements and wrongs

complained of herein entered this District, the Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

**PARTIES**

**Plaintiff**

19.     Plaintiff Darren Wakefield is a current Dutch Bros shareholder who has continuously held Dutch Bros common stock at all relevant times.

**Defendant Ricci**

20.     Defendant Ricci is CEO of Dutch Bros and has served as a director since August 2021. From August 2021 to February 2023, he served as President of the Company. As of March 21, 2023, Defendant Ricci held 2,293,865 shares of Dutch Bros common stock. At the close of trading on March 21, 2023, Dutch Bros' stock price was $29.45, thus Defendant Ricci owned approximately $67 million worth of Company stock.

21.     Defendant Ricci's compensation for the fiscal year ended on December 31, 2022 ("FY 2022") was $1,114,060, of which $550,000 was in salary, $500,000 was in bonus, and $64,060 was in all other compensation.

22.      During the Relevant Period, Defendant Ricci also sold shares of Company stock at artificially inflated prices while in possession of inside information. On March 7, 2022, Defendant Ricci sold 71,125 shares of Dutch Bros common stock at an average price per share of $46.08 for a net profit of $3,277,268. Additionally, on May 9, 2022, Defendant Ricci sold 71,125 shares of Dutch Bros common stock at an average price per share of $43.09 for a net profit of $3,064,420. In total, Defendant Ricci netted $6,341,788 in profit from his inside sales, thus exposing his motive for taking part in the misconduct.

**Defendant Jemley**

23.    Defendant Jemley has been Dutch Bros' CFO since January 2020. As of March 21, 2023, Defendant Jemley held 1,167,032 shares of Dutch Bros common stock. At the close of trading on March 21, 2023, Dutch Bros' stock price was $29.45, thus Defendant Ricci owned approximately $34.4 million worth of Company stock.

24.    Defendant Jemley's compensation for FY 2022 was $723,333, of which $472,500 was in salary, $225,000 was in bonus, and $25,833 was in all other compensation.

25.    During the Relevant Period, Defendant Jemley also sold shares of Company stock at artificially inflated prices while in possession of inside information. On March 15, 2022, Defendant Jemley sold 15,000 shares of Dutch Bros common stock at an average price per share of $48.61 for a net profit of $729,105. Additionally, on April 5, 2022, Defendant Jemley sold 5,000 shares of Dutch Bros common stock at an average price per share of $55.45 for a net profit of $277,240. In total, Defendant Jemley netted $1,006,345 in profit from his insider sales, thus exposing his motive for taking part in the misconduct.

**Defendant Boersma**

26.    Defendant Travis Boersma ("Boersma") is co-founder and, since August 2021, has served as Executive Chairman of Dutch Bros' Board. As of March 21, 2023, Defendant Boersma was a controlling shareholder of Dutch Bros, holding 129,423,699 shares, or 48.0%, of Dutch Bros common stock through him and his affiliated entities. At the close of trading on March 21, 2023, Dutch Bros' stock price was $29.45, thus Defendant Boersma owned approximately $3.8 billion worth of Company stock.

27.    Defendant Boersma's compensation for FY 2022 was $1,509,989, of which $1,500,000 was in salary and $8,989 was in all other compensation.

**Defendant Broader**

28.     Defendant Shelley Broader ("Broader") has been a Dutch Bros director since August 2021. She is also Chair of the Audit and Risk Committee. As of March 21, 2023, Defendant Broader held 5,601 shares of Dutch Bros common stock. At the close of trading on March 21, 2023, Dutch Bros' stock price was $29.45, thus Defendant Broader owned approximately $164,949 worth of Dutch Bros stock.

29.     Defendant Broader's compensation for FY 2022 was $184,174, of which $84,190 was in fees earned or paid in cash and $99,984 was in stock awards.

**Defendant Davis**

30.     Defendant Thomas Davis ("Davis") has been a Dutch Bros director since August 2021. He is also Chair of the Compensation Committee. As of March 21, 2023, Defendant Davis held 1,254 shares of Dutch Bro common stock. At the close of trading on March 21, 2023, Dutch Bros' stock price was $29.45, thus Defendant Davis owned approximately $36,930 worth of Dutch Bros stock.

31.     Defendant Davis' compensation for FY 2022 was $182,984, of which $83,000 was in fees earned or paid in cash and $99,984 was in stock awards.

**Defendant Esserman**

32.     Defendant Charles Esserman ("Esserman") has been a Dutch Bros director since August 2021.

33.     For FY 2022, Defendant Esserman received no additional compensation from Dutch Bros for his service as a director.

**Defendant George**

34.     Defendant Kathryn George ("George") has been a Dutch Bros director since

8

August 2021. As of March 21, 2023, Defendant George held 1,254 shares of Dutch Bros common stock. At the close of trading on March 21, 2023, Dutch Bros' stock price was $29.45, thus Defendant George owned approximately $36,930 worth of Dutch Bros stock.

35.     Defendant George's compensation for FY 2022 was $171,696, of which $71,712 was in fees earned or paid in cash and $99,984 was in stock awards.

**Defendant Gillett**

36.     Defendant Stephen Gillett ("Gillett") has been a Dutch Bros director since December 2021. He is also a member of the Audit and Risk Committee. As of March 21, 2023, Defendant Gillett held 6,904 in Dutch Bros common stock. At the close of trading on March 21, 2023, Dutch Bros' stock price was $29.45, thus Defendant Gillett owned approximately $203,323 worth of Dutch Bros stock.

37.     Defendant Gillett's compensation for FY 2022 was $180,794, which included $80,810 in fees earned or paid in cash and $99,984 in stock awards.

**Defendant Jack**

38.     Defendant Blythe Jack ("Jack") has been a Dutch Bros director since August 2021. She is also a member of the Compensation Committee.

39.     For FY 2022, Defendant Jack did not receive any additional compensation from Dutch Bros for her role as a director.

**Nominal Defendant Dutch Bros**

40.     Dutch Bros is a Grant Pass, Oregon-based Delaware corporation. The Company's principal executive offices are situated at 110 SW 4th Street, Grants Pass, Oregon 97526. Dutch Bros' shares trade on the New York Stock Exchange ("NYSE") under the ticker "BROS."

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

41.     By reason of their positions as officers, directors, and/or fiduciaries of the Company, the Individual Defendants owed Dutch Bros and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Dutch Bros in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Dutch Bros and its shareholders so as to benefit all shareholders equally. Each director and officer of the Company owes to Dutch Bros and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

42.     The Individual Defendants' positions of control and authority as directors and/or officers of Dutch Bros enabled them to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. To discharge their duties, the officers and directors of Dutch Bros were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

43.     Each Individual Defendant, by virtue of their position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Dutch Bros, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and directors of the Company

has been ratified by the remaining Individual Defendants who collectively comprised a majority of Dutch Bros' Board at all relevant times.

44.     As senior executive officers and/or directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, including the dissemination of false information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information. Further, they had a duty to ensure the Company remained in compliance with all applicable laws.

45.     To discharge their duties, the officers and directors of Dutch Bros were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Dutch Bros were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, Oregon, and the United States, and pursuant to Dutch Bros' own Code of Business Conduct and Ethics (the "Code of Conduct");

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)      remain informed as to how Dutch Bros conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)      establish and maintain systematic and accurate records and reports of the business and internal affairs of Dutch Bros and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)      maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Dutch Bros' operations would comply with all applicable laws and Dutch Bros' financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)      exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)      refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)      examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

46.      In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with

and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

47.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, waste of corporate assets, gross mismanagement, abuse of control, and violations of the Exchange Act; (ii) conceal adverse information concerning the Company's operations, financial condition, legal compliance, future business prospects, and internal controls; and (iii) artificially inflate the Company's stock price.

48.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully or recklessly to conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants who is a director of Dutch Bros was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

49.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or

substantially assisted in the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

50.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Dutch Bros and was at all times acting within the course and scope of such agency.

## THE INDIVIDUAL DEFENDANTS' MISCONDUCT

### Background

51.     Dutch Bros is a drive-thru coffee chain with company-owned and franchised locations throughout the western and central United States. Dutch Bros is headquartered in Grants Pass, Oregon and incorporated in Delaware. As of March 31, 2022, Dutch Bros has 572 shops, with 310 company-operated and 262 franchised.

### False and Misleading Statements

#### *March 1, 2022, Conference Call*

52.     On March 1, 2022, Dutch Bros hosted an earnings conference call to discuss its financial results for the fourth quarter of 2021. During the conference call, Defendant Ricci stated the following:

> Our confidence in our people pipeline and development team allowed us to accelerate openings ahead of plan, allowing the shops to sooner contribute to profitability in 2022. While we are not immune to margin pressures, but are managing it appropriately, we continue to look for operational improvements and further opportunities in our market-based pricing model.

53.     Additionally, an analyst asked : "[a]re you contemplating adding more pricing to address some of the cost pressure in the business this year?" In response, Defendant Ricci stated:

> So, we look typically in a normal time frame. We're going to look at our pricing windows every 6 months, right, in the fall before holiday, in the spring before summer. And so we're very mindful of that. I think we've been fortunate to not have a lot of inflation drag, both in '21 and frankly, moving into early '22. And so

we haven't felt compelled . . .. But we are feeling good as we enter '22 with the trajectory of our margins, given everything going on.

54.     Another analyst later in the call inquired about the Company's 2022 margins, asking: "what [do] you think, well, COGS and labor inflation might be in '22[?] And therefore, if you can give any kind of directional color . . . what guidance might be for the first quarter of the full year '22 on that restaurant operating margin line?" Defendant Jemley answered:

> Yes, so we're fortunate that the two big costs, cost of goods and labor, we don't have any really upward momentum in the labor line. So we're starting halfway better than everybody else to begin with. And then secondly, we have a pretty simple pantry of goods.
>
> What we're really dealing with right now is freight and logistics costs going up. But we're able to do as shown in Q4, and the walk I gave you in COGS, we are really able to handle that pretty effectively. And we'll get a full quarter of the price impact from November in out Q1. In terms of guiding a specific margin for Q1 is the next lowest seasonality.
>
> And then we kind of get into Q2. ***But I just think from other than the discount rollover from a year-over-year perspective, we're just not feeling compression in margins. And the biggest thing for us is our labor costs are stable.***

(Emphasis added.)

55.     Later in the call, another analyst asked for context on the Company's guidance, asking: "does guidance embed some level of conservatism for the quarter? Or . . . just two-thirds of the way through the first quarter, that January maybe was a little bit more soft due to Omicron before rebounding in February? Just looking to better contextualize the guidance for 1Q." In response, Defendant Jemley answered:

> Yes. ***It was softer in January. It was better in February, less outages***. We're sitting ahead of the mid-singles right now. We're—like everybody, don't know where the world is going to go over the next 30 days with all that's going on. And so we're just being a little tepid about how we look at things. It doesn't really move the needle much. The biggest revenue driver is annualization of new stores and new stores getting added. So it gets a lot of talk track and it is important to the underlying health of the business, but it's really not that financially meaningful right now as fast as we're growing the top line. That's why we don't – we try not to overthink it.

(Emphasis added.)

56.     The statements in paragraphs ¶¶ 52-55 above were materially false and/or misleading and failed to disclose material adverse facts about Dutch Bros' business, operations, and prospects. Specifically, the identified statements failed to disclose that: (i) Dutch Bros was experiencing an increase in costs and expenses, including costs related to dairy; (ii) as a result, the Company experienced heightened margin pressure and deteriorating profitability in Q1 2022; and (iii) Dutch Bros failed to maintain internal controls. Consequently, Defendants' statements about Dutch Bros' business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### *2022 Proxy Statement*

57.     Dutch Bros filed a Schedule 14A with the SEC on April 21, 2022 (the "2022 Proxy Statement"). The following Defendants solicited the 2022 Proxy Statement: Ricci, Boersma, Broader, Davis, Esserman, George, Gillett, and Jack. The 2022 Proxy Statement was filed pursuant to Section 14(a) of the Exchange Act and contained material misstatements and omissions.

58.     The 2022 Proxy Statement asked shareholders to vote to approve, among other things, (i) the reelection of directors Boersma, Broader, Davis, Esserman, George, Gillett, Jack, and Ricci to the Board; and (ii) the appointment of KPMG LLP as the independent registered public accounting firm for Dutch Bros for FY 2022.

59.     The 2022 Proxy Statement made the following statements about the Board's and Audit and Risk Committee's risk oversight functions, stating the following, in relevant part:

> One of the Board's key functions is informed oversight of Dutch Bros' risk management process. The Board and Audit and Risk Committee of the Board administer risk oversight functions to address risks inherent in their respective areas of oversight. In particular, our Board is responsible for monitoring and assessing strategic risk exposure, including a determination of the nature and level of risk appropriate for us. Our Audit and Risk Committee has the responsibility to consider

and discuss our major financial risk exposures and the steps our management has taken to monitor and control these exposures, including guidelines and policies to govern the process by which risk assessment and management is undertaken. The Audit and Risk Committee also monitors compliance with legal and regulatory requirements, in addition to oversight of the performance of our internal audit function. Audit and Risk Committee responsibilities also include oversight of cybersecurity risk management, and, to that end, the committee periodically reviews and discusses with management risks relating to data privacy, technology, and information security, including cybersecurity, and backup of information systems and the steps we have taken to monitor and control such exposures.

60.     The 2022 Proxy Statement made the following statements about the role of the Company's Code of Business Conduct and Ethics, stating the following, in relevant part:

Our Code of Business Conduct and Ethics applies to all of our employees, officers and directors. This includes our principal executive officer, principal financial officer, and principal accounting officer or controller, or persons performing similar functions. The full text of our Code of Business Conduct and Ethics may be viewed at the investors relations portion of our website at https://investors.dutchbros.com/govenance. We intend to satisfy the disclosure requirements under Item 5.05 of the SEC Form 8-K regarding an amendment to, or waiver from, a provision of our Code of Business Conduct and Ethics by posting such information on our website at the website address and location specified above.

61.     The statements made in the 2022 Proxy Statement were materially false and misleading because, contrary to the representations in the 2022 Proxy Statement, the Board failed to following the Company's Code of Business Conduct and Ethics, which is shown by the Individual Defendants (i) making and/or causing Dutch Bros to make a series of false and misleading statements and/or omissions alleged herein; and (ii) failing to report these violations of the Code of Business Conduct and Ethics. Moreover, the statements in 2022 Proxy Statement about the Board's risk oversight functions were materially false and misleading because the Board was failing to adequately perform its risk oversight functions.

62.     Additionally, the 2022 Proxy Statement failed to disclose that: (i) Dutch Bros was experiencing an increase in costs and expenses, including costs related to dairy; (ii) as a result, the

Company experienced heightened margin pressure and deteriorating profitability in Q1 2022; and (iii) Dutch Bros failed to maintain internal controls. As a result, the Company's public statements were materially false and misleading at all relevant times.

63.     Consequently, the false and misleading statements that the Individual Defendants made and/or caused the Company to make in the 2022 Proxy Statement caused shareholders to, among other things, vote to re-elect Defendants Ricci, Boersma, Broader, Davis, Esserman, George, Gillett, and Jack to the Board, thereby enabling those Defendants to continue breaching their fiduciary duties to Dutch Bros.

## THE TRUTH EMERGES

64.     On May 11, 2022, after the market closed, the Company issued a press release announcing its financial results for Q1 2022. The Company reported a net loss of $16.3 million, compared to a net loss of $4.8 million for the first quarter of 2021. Additionally, Dutch Bros reported an adjusted net loss of $2.5 million (a loss of $0.02 per share). This fell below the estimated earnings of $0.01 per share expected by The Street. Dutch Bros said:

> Joth Ricci, Chief Executive Officer and President of Dutch Bros Inc., stated, "The consumer demand for our beverages remains strong. Our substantial top-line revenue growth of 54% was primarily driven by the 107 company-operated shops opened over the past twelve months, a 56% increase, including 34 during the first quarter, and same shop sales of 6.0%. As a people-led growth story, we are particularly encouraged by our staffing levels and the performance of our newest shops, spread across many markets, including some that generated record initial sales. Our ability to increase revenues while successfully developing new shops reinforces our commitment to offering exceptional drive-thru experiences and confidence in our long-term strategy and growth targets."

> He added, "Still *we were not immune to the record inflation* that surpassed our expectations and pressured margins in our company-operated shops. While we believe these margin impacts may be short-term, *we have opted to take a more conservative stance regarding adjusted EBITDA for 2022 as we monitor our pricing and the escalating cost environment.*

(Emphasis added.)

65.     The press release highlighted the following about Q1 2022:

**First Quarter 2022 Highlights:**

- **Opened** 34 new shops, our second-highest quarterly opening count on record. All shops opened in the quarter were company-operated shops.

- **Total revenues** grew 54.0% to $152.2 million as compared to $98.8 million in the same period of 2021.

- **Company-operated shop revenues** increased 67.1% to $130.2 million as compared to $77.9 million in the same period of 2021.

- **System same shop sales grew** 6.0% in the first quarter and 11.1% vs. 2019. Company-operated same shop sales grew 5.1% in the first quarter, reflecting higher traffic and check, partially offset by intentional sales transfer, and 9.9% vs. 2019.

- **Company-operated shop gross profit** was $16.6 million as compared to $17.6 million in the same period of 2021.

- **Company-operated shop contribution**, a non-GAAP financial measure, grew 14.1% to $23.8 million as compared to $20.8 million in the same period of 2021.

- **Net loss** was $(16.3) million as compared to $(4.8) million in the same period of 2021. For the first quarter of 2022, we recognized $9.9 million of non-cash equity-based compensation.

- **Adjusted EBITDA**, a non-GAAP financial measure, was $9.7 million as compared to $18.7 million in the same period of 2021. Rapid escalations in dairy costs well above historic levels drove increases in our cost of sales. Cost related to more rapid new unit growth, escalating minimum wage in select mature markets, and other factors drove increases in labor costs. The timing of certain maintenance and travel costs also contributed to increased operating and other costs.

- **Adjusted net income (loss)**, a non-GAAP financial measure, was $(2.5) million as compared to $12.3 million in the same period of 2021.

- **Net loss per share of Class A and Class D common stock - diluted was $(0.10) and Adjusted net loss per fully exchanged share of common stock**, a non-GAAP financial measure, was $(0.02).

(Footnotes omitted.)

66.     Alongside the release of the press release on May 11, 2022, the Company hosted an earnings conference call to discuss the Q1 2022 results that same day. On the call, Defendant Ricci stated that varying factors shrunk the Company's margins, including raising dairy costs, which resulted in the Company's net loss. In relevant part, Defendant Ricci stated:

> While we are pleased with the strength of our revenue and shop development in the first quarter, margin pressure on our company shops led to a lower adjusted EBITDA result than we expected. That margin pressure was primarily a result of these factors: our decision to be disciplined on the price we took, which we believe is less than half as much as many of our peers: faster inflation and costs of goods, especially in dairy; the pull forward of deferred expenses related to the maintenance of shops: and normal new store inefficiency amplified by the volume of new and ramping units in quarter 1.
>
> …
>
> Everything we do inside the company is focused on making the business better and stronger 3, 5 and 10 years from today. Unfortunately, in this past quarter, a confluence of cost pressure overwhelmed our decisions around price and resulted in near-term margin compression. We anticipated higher expenditures. However, we did not perceive the speed and magnitude of cost escalation within the quarter.
>
> ***Dairy, for example, which makes up 28% of our commodity basket, rose almost 25% in Q1. While costs rose throughout the quarter, we experienced a change in sales trajectory from mid- March onward as macroeconomic headwinds accelerated and comps turned negative.*** We are monitoring these factors and have chosen to take a ***more conservative stance on our 2022 outlook given macroeconomic uncertainty.***
>
> …
>
> ***We opened 54 company shops in a condensed time frame from December through March. Therefore, we experienced margin pressure from an accelerating pace of new unit openings both in terms of elevated preopening spend and normal new shopping efficiency.*** Given the pace of openings and the speed by which the business is transforming, a degree of variability within our results may often be the case over time.
>
> …
>
> As I mentioned before, quarterly adjusted EBITDA was $9.7 million, impacted largely by our decisions on pricing, dairy costs, labor costs, our decision to invest in preventative maintenance and the impact of accelerated new shop development.

(Emphasis added.)

67.     Alongside Defendant Ricci on the call, Defendant Jemley stated the following:

However, as Q1 unfolded, we experienced 3 significant rapid cost escalations that, on an individual basis, would not have caused distress, ***but when taken collectively, did overwhelm our P&L: faster input cost inflation, especially in dairy and also labor cost increases; the pull forward of expenses related to the ongoing care and condition of shops; and new and normal new store inefficiency amplified by the sheer volume of new and ramping units in quarter 1.***

In the first quarter, we encountered 480 basis points of cost pressure from those higher ingredient costs relative to the prior year. As Joth noted, ***dairy increased by almost 25% towards the end of the first quarter*** to near historic highs in what is now 28% of our ingredients cost basket. We did not anticipate the sharp rise. ***While we do not believe dairy will stay this high indefinitely, we have to assume it will remain high for most of 2022.***

***Additionally, we encountered 240 basis points of cost pressure on our labor line. This includes high training costs, higher overtime to keep stores open, and higher legislated minimum wage advances in California, Arizona, and Washington states***. We continue to see stability in our workforce despite a slight uptick in turnover in the first quarter. The good news is that our stores are staffed and operating at full hours. The combination of margin pressure from ingredient costs and higher labor costs resulted in margin compression of 720 basis points to offsets we achieved through menu price increases.
…
***Inflation in both ingredient and operating costs has risen rapidly***, catching us off guard from the speed and the sharpness of this rise. In the short term, it is unlikely that our new menu price actions will fully offset the extent of these input cost increases.

(Emphasis added.)

68.     Defendant Ricci explained during the question-and-answer portion of the call that

Dutch Bros' plan was to decrease costs by improving its dairy purchasing and labor management

practices, saying the following:

So I think on the commodity costs, in the place that we're at right now, to see short-term effective improvement is limited in how we buy and kind of where we're at. ***We're out long on coffee. Dairy, obviously, you don't have a lot on control over.*** And then really, we're kind of beholden to some freight impacts and some other small basket of goods because we just don't have that much in out basket. ***It just so happens that dairy makes up such a large percentage of that basket.***

Previously, we have been talking coffee a lot and had said it makes up just a small percentage. We're OK on coffee, which continues to be the case. ***But dairy certainly caught us off guard. I do think we have some opportunity to improve internally on our purchasing capabilities and how we look at that long term.*** And as we grow, that is an area of emphasis for Charlie and myself, as we kind of, I'd say, build that muscle here at Dutch Bros.

Two is related to how we manage shops. And I will tell you that our retail shops team is looking hard right now at labor. ***I think we all need to be looking at labor, and we all need to be thinking about how we manage labor, especially related to overtime and things of that nature and may be related to overtime and things of that nature and may be related to some daypart flexibility. Just because of the nature of the business is changing a little bit and the nature of the market is changing a little bit, we need to be flexible on how we do that.***

69.     The market reacted negatively to this news, as Dutch Bros' stock price fell by from a closing price of $34.37 per share on May 11, 2022, to close at $25.11 per share on May 12, 2022. This represented a drop in price by $9.26 per share, or 26.9%.

## DAMAGES TO DUTCH BROS

70.     As a direct and proximate result of the Individual Defendants' misconduct, Dutch Bros has been seriously harmed and will continue to be harmed. The Company will be subject to vast expenditures including, but not limited to:

- •   Legal fees incurred in connection with the Securities Class Action filed against the Company and two of the Individual Defendants;

- •   Costs incurred from the compensation and benefits paid to the Individual Defendants who have breached their fiduciary duties Block;

- •   Costs incurred from remedying the material weaknesses in the Company's financial reporting controls.

71.     Additionally, Dutch Bros' business, goodwill, and reputation with its industry partners, regulators, and stockholders have been gravely tarnished. For the foreseeable future, the Company will suffer from a "liar's discount" from the Company's misrepresentations and the

Individual Defendants' breaches of fiduciary duties.

## DERIVATIVE ALLEGATIONS

72.     Plaintiff brings this action derivatively and for the benefit of Dutch Bros to redress injuries that have been suffered and will be suffered by Dutch Bros as a direct result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Dutch Bros, violations of the Exchange Act, as well as the aiding and abetting thereof. Dutch Bros is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

73.     Plaintiff has continuously been a stockholder of Dutch Bros at all relevant times. Plaintiff will adequately and fairly represent the interests of Dutch Bros in enforcing and prosecuting its rights.

## DEMAND IS EXCUSED AS FUTILE

74.     Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

75.     When this action was filed, Dutch Bros' Board consisted of nine members: Defendants Boersma, Broader, Davis, Esserman, George, Gillett, Jack, and Ricci (the "Director-Defendants"), along with non-party Ann Miller (together with the Director-Defendants, the "Directors"). Plaintiff only needs to allege demand futility as to five of nine Directors who were on Dutch Bros' Board at the time this action was filed.

76.     Demand is excused as to all of the Director-Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause Dutch Bros to make false and misleading statements and omissions of material fact, thus rendering them unable to impartially

investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

77.     In complete abdication of their fiduciary duties, the Director-Defendants either knowingly or recklessly made and/or caused the Company to make the materially false and misleading statements alleged herein. The fraudulent scheme was intended to make the Company appear more profitable and attractive to investors. Moreover, the Director-Defendants caused the Company to fail to maintain internal controls. As a result of the foregoing, demand would be futile, and thus excused, as the Director-Defendants breached their fiduciary duties, face a substantial likelihood of liability, and are not disinterested.

78.     **Defendant Ricci -** Defendant Ricci is the Company's CEO and member of the Dutch Bros Board. Therefore, as Dutch Bros admits, Defendant Ricci is a non-independent director. Dutch Bros provides Defendant Ricci with his principal occupation for which he receives significant compensation as detailed above.

79.     As CEO, Defendant Ricci was responsible for all the false and misleading statements and omissions made during the Relevant Period, including those false and misleading statements that he himself made on conference calls. In addition, the 2022 Proxy Statement was solicited on Defendant Ricci's behalf and contained false and misleading statements. As Dutch Bros' highest officer and as a trusted Board member, he conducted little, if any, oversight of the scheme to cause Dutch Bros to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Moreover, Defendant Ricci is a defendant in the Securities Class Action. As a result, Defendant Ricci breached his fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Therefore, demand upon

him is futile and excused.

80.     **Defendant Jack** – Defendant Jack has served as a Dutch Bros director since August 2021. Defendant Jack is entitled to significant compensation because of her role as a Dutch Bros director.

81.     In addition, the 2022 Proxy Statement was solicited on her behalf and contained false and misleading statements. As a trusted Dutch Bros director, she conducted little, if any, oversight of the scheme to cause Dutch Bros to make false and misleading statements, consciously disregarded her duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. As a result, Defendant Jack breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

82.     **Defendant Esserman** – Defendant Esserman has been a Dutch Bros director since August 2021. Defendant Esserman is entitled to significant compensation for his role as a Dutch Bros director.

83.     Additionally, the 2022 Proxy Statement was solicited on Defendant Esserman's behalf and contained false and misleading statements. As a trusted Dutch Bros director, he conducted little, if any, oversight of the scheme to cause Dutch Bros to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. As a result, Defendant Esserman breached his fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon him is futile and, therefore, excused.

84.     **Defendant George** – Defendant George has served as a Dutch Bros director since

August 2021. Defendant George is entitled to significant compensation for her role as a Dutch Bros director.

85.     Additionally, the 2022 Proxy Statement was solicited on Defendant George's behalf and contained false and misleading statements. As a trusted Dutch Bros director, Defendant George conducted little, if any, oversight of the scheme to cause Dutch Bros to make false and misleading statements, consciously disregarded her duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. As a result, Defendant George breached her fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon her is futile and, therefore, excused.

86.     **Defendant Broader -** Defendant Broader has served as a Dutch Bros director since August 2021. She is also Chair of the Audit and Risk Committee. Defendant Broader is entitled to significant compensation for her role as a Dutch Bros director.

87.     Additionally, the 2022 Proxy Statement was solicited on her behalf and contained false and misleading statements that contributed to her reelection to the Board. As a trusted Company director, she conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded her duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. As a result, Defendant Broader breached her fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon her is futile and, therefore, excused.

88.     **Defendant Gillett –** Defendant Gillett has served as a Dutch Bros director since December 2021. He is also a member of the Audit and Risk Committee. Defendant Gillett is

entitled to significant compensation for his role as a Dutch Bros director.

89.     Additionally, the 2022 Proxy Statement was solicited on Defendant Gillett's behalf and contained false and misleading statements that contributed to his reelection to the Board. As a trusted Dutch Bros director, he conducted little, if any, oversight of the scheme to cause Dutch Bros to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. As a result, Defendant Gillett breached his fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon him is futile and, therefore, excused.

90.     **Defendant Davis** – Defendant Davis has served as a Dutch Bros director since August 2021. He is also Chair of the Compensation Committee. Defendant Davis is entitled to significant compensation for his role as a Dutch Bros director.

91.     Additionally, the 2022 Proxy Statement was solicited on his behalf and contained false and misleading statements. As a trusted Dutch Bros director, Defendant Davis conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. As a result, Defendant Davis breached his fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon him is futile and, therefore, excused.

92.     **Defendant Boersma** – Defendant Boersma is co-founder, Executive Chairman of the Board, and the controlling shareholder of Dutch Bros. Defendant Boersma is entitled to significant compensation for his role as Executive Chairman.

93.     Additionally, the 2022 Proxy Statement was solicited on his behalf and contained

false and misleading statements that contributed to his reelection to the Board. As a trusted Dutch Bros director, he conducted little, if any, oversight of the scheme to cause Dutch Bros to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. As a result, Defendant Boersma breached his fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon him is futile and, therefore, excused.

94.     Additional reasons that demand on the Board is futile follow.

95.     Defendants Broader and Gillett (the "Audit Committee Defendants") served as members of the Audit and Risk Committee at all relevant times. As per Dutch Bros' Audit and Risk Committee Charter, members of the Audit and Risk Committee are responsible for ensuring the effectiveness of Dutch Bros' internal controls, the integrity of its financial statements, and Dutch Bros' compliance with laws and regulations. At all relevant times discussed herein, the Audit Committee Defendants failed to ensure the integrity of Dutch Bros' internal controls and allowed materially misleading financial statements to be disseminated in Dutch Bros' SEC filings and other disclosures. As a result, the Audit Committee Defendants have breached their fiduciary duties, cannot be considered disinterested, and, therefore, demand is excused as to them.

96.     Dutch Bros has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director-Defendants have not filed any lawsuits against the Individual Defendants or others who were responsible for that wrongful conduct to attempt to recover for Dutch Bros any part of the damages Dutch Bros suffered and will continue to suffer thereby. Thus, any demand upon the Director-Defendants would be futile.

97.     The Individual Defendants' conduct described herein and summarized above could

not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director-Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). Because a majority of the Director-Defendants face a substantial likelihood of liability, the Director-Defendants are self-interested in the transactions challenged herein and are not capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. As such, demand is excused as being futile.

98.     The acts complained of in this complaint constitute violations of fiduciary duties owed by Dutch Bros' officers and directors, and these acts are incapable of ratification.

99.     The Director-Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Dutch Bros. If such a directors' and officers' liability insurance policy covers the Director-Defendants, said policy may contain provisions that eliminate coverage for any action brought directly by the Company against the Director-Defendants, known as, among other names, the "insured-versus-insured exclusion." As such, if the Director-Defendants were to sue themselves or certain of the officers of Dutch Bros, there would be no directors' and officers' insurance protection. Because of that, the Director-Defendants cannot be expected to bring such a suit. On the other hand, if such a suit is brought derivatively, just as this action is, such insurance coverage, if such a policy exists, will provide a basis for the Company to effectuate a recovery. Therefore, demand on the Director-Defendants is futile and excused.

100.     If no such directors' and officers' liability insurance policy exists, then the Director-

Defendants will not cause the Company to sue the Individual Defendants named herein because, if it did, they would face a large uninsured individual liability. Accordingly, demand is also futile in that event.

101.     Thus, for all of the reasons set forth above, all of the Director-Defendants, and, if not all of them, at least five of the Director-Defendants, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## **FIRST CLAIM**

**Against the Individual Defendants for Violations of Section 14(a) of the Exchange Act**

102.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

103.     Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

104.     Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

105.     Under the direction and watch of the Director-Defendants, the 2022 Proxy

Statement failed to disclose that, contrary to its assertions, the Board and its committees, including the Audit and Risk Committee, were not adequately exercising their risk oversight functions and were causing, or permitting, the Company to issue false and misleading statements.

106.    The 2022 Proxy Statement also failed to disclose that: (i) Dutch Bros was experiencing an increase in costs and expenses, including costs related to dairy; (ii) as a result, the Company experienced heightened margin pressure and deteriorating profitability in Q1 2022; and (iii) Dutch Bros failed to maintain internal controls. Consequently, Defendants' statements about Dutch Bros' business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

107.    In exercising reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements within the 2022 Proxy Statement were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the various matters that were set forth in the 2022 Proxy Statement, including but not limited to, the election of Defendants Boersma, Broader, Davis, Esserman, George, Gillett, Jack, and Ricci to the Board.

108.    The false and misleading elements contained within the 2022 Proxy Statement led to, among other things, the election of the Defendants Boersma, Broader, Davis, Esserman, George, Gillett, Jack, and Ricci which allowed them to continue breaching their fiduciary duties to Dutch Bros.

109.    The Individual Defendants' material misrepresentations and omissions in the 2022 Proxy Statement damaged Dutch Bros.

110.    Plaintiff, on behalf of Dutch Bros, has no adequate remedy at law.

## SECOND CLAIM

### Against the Individual Defendants for Breach of Fiduciary Duties

111.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

112.    Each Individual Defendant owed to Dutch Bros the duty to exercise candor, good faith, and loyalty in the management and administration of the Company's business and affairs.

113.    Each of the Individual Defendants violated and breached his fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

114.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Dutch Bros.

115.    In breach of their fiduciary duties owed to Dutch Bros, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and/or misleading statements and/or omissions of material fact that failed to disclose, *inter alia*, that: (i) Dutch Bros was experiencing an increase in costs and expenses, including costs related to dairy; (ii) as a result, the Company experienced heightened margin pressure and deteriorating profitability in Q1 2022; and (iii) Dutch Bros failed to maintain internal controls. Consequently, Defendants' statements about Dutch Bros' business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

116.    The Individual Defendants failed to correct and/or caused the Company to fail to correct the false and/or misleading statements and/or omissions of material fact, which renders them personally liable to the Company for breaching their fiduciary duties.

117.    Also, in breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain internal controls.

118.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent scheme set forth herein and to fail to maintain internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Dutch Bros' securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the scheme alleged herein and to prevent it from continuing to occur.

119.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

120.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Dutch Bros has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

121.    Plaintiff on behalf of Dutch Bros has no adequate remedy at law.

### THIRD CLAIM

**Against the Individual Defendants for Unjust Enrichment**

122.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

123.    By their wrongful acts, violations of law, and false and misleading statements and

omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Dutch Bros.

1.      The improper conduct resulted in Individual Defendants benefitting either financially, or receiving stock options, bonuses, or other similar forms of compensation from Dutch Bros that were directly tied to Dutch Bros performance and/or resulted from its artificially inflated valuation. The Individual Defendants also received other forms of payment and/or compensation that were clearly unjust in light of the Individual Defendants' bad faith conduct.

2.      Plaintiff, as a shareholder and a representative of Dutch Bros, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breaches of their fiduciary duties.

3.      Plaintiff on behalf of Dutch Bros has no adequate remedy at law.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)      Declaring that Plaintiff may maintain this action on behalf of Dutch Bros, and that Plaintiff is an adequate representative of the Company;

(b)      Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Dutch Bros;

(c)      Determining and awarding to Dutch Bros the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)      Directing Dutch Bros and the Individual Defendants to take all necessary

actions to reform and improve Dutch Bros' corporate governance and internal procedures to comply with applicable laws and to protect Dutch Bros and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

> 1.  a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

> 2.  a provision to permit the shareholders of Dutch Bros to nominate at least four candidates for election to the Board;

> 3.  a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations;

> €      Awarding Dutch Bros restitution from the Individual Defendants, and each of them;

> (f)      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

> (g)      Granting such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury.

Dated: June 30, 2023                **THE ROSEN LAW FIRM, P.A.**

                                              */s/ Phillip Kim*
                                              Phillip Kim
                                              275 Madison Avenue, 40th Floor
                                              New York, NY 10016
                                              Telephone: (212) 686-1060
                                              Facsimile: (212) 202-3827
                                              Email: pkim@rosenlegal.com

                                              *Counsel for Plaintiff*

## VERIFICATION

I, Darren Wakefield am a plaintiff in the within action. I have reviewed the allegations made in this Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___ day of _____, 2023.

6/9/2023

_Darren Wakefield_
584A6C32388A462...